OPINION
{¶ 1} Plaintiff-appellant, Robert W. Dray ("Dray"), appeals the April 27, 2005 judgment of the Court of Common Pleas of Allen County, Ohio granting the mistrial and dismissal of this case with prejudice.
 {¶ 2} On April 26, 2002, Dray purchased a used Oldsmobile Aurora from defendant-appellee, Lee Kinstle Chevrolet Olds ("Kinstle"). The cash price of the Aurora was $21,950.00. The used Aurora had been previously owned by Madge Brickner of the Brickner Funeral Homes. When she owned the car, she had a 1967 General Electric business radio installed. The Brickner family never had any problems with the vehicle, including electrical concerns due to the radio being installed.
 {¶ 3} Prior to purchasing the Aurora, Dray did not take the opportunity to test drive the vehicle even though he was provided with such an opportunity. However, after purchasing the Aurora but before taking delivery of the vehicle at Kinstle's, Dray noticed a few things that he believed Kinstle to have misrepresented. First, he noticed that the vehicle was not equipped with OnStar which was supposed to be standard equipment in the vehicle. Next, he noticed that the car had almost 18,000 miles on it and he had been told that it had under 10,000 miles on it. Upon leaving Kinstle on April 26, Dray discovered other things that he believed did not conform to the contract of sale because of defects that occurred due to extensive electrical alterations. These defects included brackets left in the trunk, standing water in running lights and license plate light, running lights and license plate light working intermittently, defective wiring, factory brackets hanging loose and sagging in the trunk, hood not shutting, drivers side heat switch malfunctioning, and heating and air conditioning fan not working.
 {¶ 4} On April 29, 2002, Dray returned the Aurora to Kinstle with a long list of problems that he had found after a full inspection of the vehicle. Kinstle stated that it would not accept the Aurora back at that time but was willing to fix it and issue a letter stating that it would stand behind any factory warranty refusal due to the installation and removal of the business radio. On May 3, 2002, Kinstle returned the Aurora to Dray. However, Dray was not pleased with the work that had been done because everything on the list of problems had not been fixed. Dray made a call to Kinstle informing them of his dissatisfaction.
 {¶ 5} On August 2, 2002, Dray initially filed a suit complaining of the problems with the Aurora that had not been fixed by Kinstle. Dray sought damages pursuant to R.C. 1345.73,1345.75 and U.C.C. 2-608. On July 17, 2003, Dray filed a Notice of Voluntary Dismissal.
 {¶ 6} On August 14, 2003, Dray filed this case against Kinstle and General Motors setting forth numerous causes of action. Dray asserted that he was entitled to cancellation of the contract pursuant to U.C.C. 2-601 or 2-608 due to breach of express warranty, breach of implied warranty, breach of implied warranty of fitness, rejection and revocation of acceptance. In addition, he asserted fraud, violation of the Consumers Sales Practices Act and cancellation under the Magnuson-Moss Act.
 {¶ 7} On October 24, 2003, Kinstle filed a Motion for Summary Judgment. On February 23, 2004, the trial court granted partial summary judgment on all of Dray's claims against Kinstle except the revocation of acceptance claim. On March 24, 2004, Dray filed a Notice of Appeal appealing the February 23, 2004, partial summary judgment. However, this appeal was dismissed on April 7, 2004 as being prematurely filed. Therefore, the trial date was set for April 19, 2004 but was vacated and rescheduled for September 13, 2004.
 {¶ 8} On August 25, 2004, Dray filed a Motion for Partial Reconsideration of the Order Granting Partial Summary Judgment on the Motion of Lee Kinstle Chevrolet Olds, Inc. which was denied. The trial court then vacated the September jury trial and rescheduled the trial for April 25, 2005. On September 7, 2004, Dray filed a Motion of Plaintiff for Leave to File an Amended Complaint. On September 8, 2004, a Judgment Entry was filed granting plaintiff leave to file an amended complaint. On September 13, 2004, Dray filed an Amended Complaint. In the Amended Complaint, Dray added an additional defendant, Community First Bank and Trust, and alleged cancellation of the contract; damages for breach of warranty; fraud; cancellation under Magnuson-Moss Act; unfair, deceptive acts and practices; consumer notice; civil conspiracy; aiding and abetting; other wrongs pursuant to R.C. 2307.60; and breach of contract. On September 20, 2004, Dray filed a second Amended Complaint.
 {¶ 9} On November 5, 2005, General Motors filed a Motion for Summary Judgment. On January 14, 2005, the trial court granted General Motor's Motion for Summary Judgment. On February 9, 2005, Community First Bank and Trust filed a Motion for Summary Judgment. On March, 16, 2005, the trial court granted Community First Bank and Trust's Motion for Summary Judgment. Also, on March 16, 2005, the trial court issued a final order reiterating that: (1) partial summary judgment in favor of Kinstle pursuant to its February 23, 2004 Motion for Summary Judgment; (2) summary judgment in favor of General Motors; and (3) summary judgment in favor of Community First Bank and Trust, and provided certification of "no just reason for delay" pursuant to Civ.R. 54(B). However, Dray did not attempt to appeal this order until May 25, 2005.
 {¶ 10} On April 25, 2005, the case went to a jury trial. However, after the trial court issued several instructions and warnings to Dray, the trial court declared a mistrial and dismissed the case with prejudice due to Dray's conduct. On April 27, 2005, the trial court issued its Judgment Entry granting the mistrial and dismissal with prejudice.
 {¶ 11} On May 25, 2005, the plaintiff-appellant filed his notice of appeal and now raises the following assignments of error:
 Assignment of Error 1 AS STATED TO THE COURT MULTIPLE TIMES, ON PAGE 2. THIS WAS NOTA "BUSINESS RADIO RATHER THAN A FACTORY RADIO, THIS WAS A "HIGHPOWERED" "AMBULANCE RADIO," BOLTED TO THE FLOOR IN THE TRUNK OFTHE OLDS.
 Assignment of Error 2 KINSTLE MADE NO WARRANTIES TO PLAINTIFF. THERE IS MULTIPLEAFFIDAVIT DOCUMENTATION ABOUT "6 WEEKS" OF PHONE CALLS TOPLAINTIFF DRAY'S HOME BY CHRIS MARTINEZ THE KINSTLE SALESMANTELLING DRAY "HOW PERFECT" THIS CAR WAS.
 Assignment of Error 3 PLAINTIFF DID NOT HAVE THE VEHICLE "INSPECTED" AND TOOK IT IN"AS IS" CONDITION. THIS IS UNTRUE. THIS CAR INSPECTED BY GM4-26-02 BY RICHARD GERMAN, FOR GM DETROIT FACTORY WARRANTY,TRANSFER. * * *
 Assignment of Error 4 I AT NO TIME IN MY DEPOSITION STATED THE "SPECIFICATIONS ANDEQUIPMENT" WERE ACCURATE. * * *
 Assignment of Error 5 JUDGE WARREN ALSO SAID, I ONLY TOOK THE CAR IN FOR REPAIR"ONCE," THAT IS BY MULTIPLE DOCUMENTATION UNTRUE. * * *
 Assignment of Error 6 SEE JUDGMENT ENTRY DATED APRIL 18, 2003 AS TO THE APRIL 23,2003 DEPOSITION, (SEE SUPREME COURT AFFIDAVIT DATED APRIL 5, 2005ATTACHED) AFTER TELEPHONE DEPOSITION WAS "OVERRULED" BY JUDGEWARREN, EVEN WITH ME SENDING HIM, "51 PAGES OF SURGICAL REPORTSAND MEDICAL REPORTS ABOUT MY SPINAL CORD DAMAGE, I WENT TOFITZGERALD OFFICE IN A WALKER FOR DEPOSITION, THE PAIN WAS SOBAD, I FELL FROM MY WALKER TO THE FLOOR, IN FITZGERALD'S OFFICE.HE CALLED A "FAKE" AND WOULD NOT EVEN CALL 911 AMBULANCE. * * *
 Assignment of Error 7 ALL THE MOTIONS I FILED TO JUDGE WARREN NOV. 18, 2004 AND DEC.22, 2004, JAN. 14, 2005 AND MAR. 8, 2005, JUDGE WARREN DID NOTANSWER MY MOTIONS NEEDED GREATLY TO PLEAD THE CASE.
 {¶ 12} Dray's assignments of error one, two, three, four and five allege factual disputes. In the first assignment of error, Dray claims that the radio that had been bolted to the trunk floor in the Aurora was an ambulance radio rather than a business radio. In the second assignment of error, Dray asserts that Martinez, a Kinstle salesman, called him for six weeks telling him how perfect the Aurora was. In the third assignment of error, Dray argues that he did have the Aurora inspected by General Motors for the factory warranty to transfer to him. In the fourth assignment of error, Dray claims that he did not state that the "specifications and equipment" were accurate. In the fifth assignment of error, Dray asserts that he took the Aurora in for repair more than once.
 {¶ 13} It is axiomatic that allegations and issues of fact are to be determined by the trier of fact. An appellate court will not make such a determination on appeal. Specifically, the factual disputes and allegations asserted by Dray would have been presented and decided by the trial court had the case been tried. However, these issues of fact were never presented in evidence at trial due to the trial court declaring a mistrial early in the proceedings. Accordingly, these allegations are not properly before this Court. Therefore, assignments of error one, two, three, four, and five are overruled.
 {¶ 14} In the sixth assignment of error, Dray essentially asserts that Judge Warren abused his discretion in overruling Dray's request for a telephone deposition in the April 18, 2003 Judgment Entry.
 {¶ 15} An appellate court will not reverse a trial court's decision regarding disposition of discovery issues absent an abuse of discretion. State ex rel. The V. Companies, et al. v.Marshall (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 16} Upon review of the record in this case, we find that the trial court did not abuse its discretion in determining that Dray's request for a telephone deposition be overruled. Moreover, the issue of whether the deposition should have been held telephonically is moot because the deposition of Dray was taken on May 21, 2003. Accordingly, the sixth assignment of error is overruled.
 {¶ 17} In the seventh assignment of error, Dray asserts that Judge Warren did not answer numerous motions he filed throughout the proceeding of the case. Three of these motions relate to General Motors and/or Community Bank and Trust. However, both of these defendants were granted Summary Judgment and both judgments were certified as final pursuant to Civ.R. 54(B). No timely notice of appeal was filed from the final judgment dismissing all claims against General Motors and Community Bank and Trust. App.R. 4 applies to an order made appealable under Civ.R. 54(B).Grabill v. Worthington Ind., Inc. (1993), 89 Ohio App.3d 485,488, 624 N.E.2d 1105. Specifically, App.R. 4(B)(5) requires that an appeal be filed within thirty days from a certified judgment entry or order appealed or the judgment or order that disposes of the remaining claims. No timely notice of appeal having been filed from those final orders, this Court is now without jurisdiction to address those issues and therefore, Dray's claims may not be raised against General Motors and/or Community Bank and Trust pursuant to the doctrine of res judicata. See In reAdoption of Greer (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, fn. 1.
 {¶ 18} Thus, the only issue remaining is whether Judge Warren ruled on the December 22, 2004 motion as it relates to Kinstle. Specifically, Dray filed this motion as an Addendum to the motion that had previously been filed on November 18, 2004. Therefore, Judge Warren ruled upon the motions of both November 18, 2004 and the December 22, 2004 Addendum in his Judgment Entry granting General Motor's Motion for Summary Judgment on January 14, 2005.
 {¶ 19} Accordingly, we find that the motion that is properly before this Court was ruled upon by Judge Warren. Therefore, assignment of error seven is overruled.
 {¶ 20} Finally, despite the lack of a specific assignment of error on the issue, it is apparent that Dray disagrees with and essentially challenges the trial court's granting a mistrial and dismissing the case with prejudice. Accordingly, in the interest of justice and because it involves an important question going to the inherent authority of the trial court to conduct a trial, we will address this overall issue.
 {¶ 21} Civ. R. 41(B)(1) governs involuntary dismissals for failure to prosecute. Specifically, Civ.R. 41(B)(1) provides:
Where the plaintiff fails to prosecute, or comply with theserules or any court order, the court upon motion of a defendant oron its own motion may, after notice to the plaintiff's counsel,dismiss an action or claim.
A condition precedent to dismissal of an action for failure to prosecute is notice to the plaintiff or plaintiff's counsel of the court's intention to dismiss. Civ.R. 41(B)(1). Notice is an absolute prerequisite for dismissal for failure to prosecute.Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 2-3,454 N.E.2d 951, 952.
 {¶ 22} Generally, dismissal with prejudice is an extremely harsh sanction and contrary to the fundamental preference for deciding cases on their merits. Jones v. Hartranft (1997),78 Ohio St.3d 368, 371, 678 N.E.2d 530. Accordingly, a court should not order a dismissal with prejudice unless the plaintiff's conduct is so "negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds" for such a dismissal.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 632, 605 N.E.2d 936; Willis v. RCA Corp. (1983),12 Ohio App.3d 1, 2, 465 N.E.2d 924, 926; Schreiner v. Karson
(1977), 52 Ohio App.2d 219, 223, 369 N.E.2d 800, 803. Despite the heightened scrutiny to which dismissals with prejudice are subject, this Court will affirm the dismissal of an action when the conduct of the parties provides "substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order." Tokles Son, Inc., 65 Ohio St.3d at 632, quoting Schreiner, 52 Ohio App.2d at 223.
 {¶ 23} It is within the sound discretion of the trial court to dismiss an action for lack of prosecution. Pembaur v. Leis
(1982), 1 Ohio St.3d 89, 91, 437 N.E.2d 1199. The appellate court is confined solely to whether the trial court abused that discretion. Id. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore,5 Ohio St.3d at 219.
 {¶ 24} In this case, the April 27, 2005 Judgment Entry (Trial Proceedings, Mistrial Dismissal with Prejudice) provides the following chronology of events leading to the dismissal:
Whereas, after many cautionary instructions and admonitions bythe Court, the defendant requested a mistrial and the Court forthe following reasons grants the same and dismisses the withinaction with prejudice.
 Whereas, prior to trial, defendant had requested certainOrders in limine which the Court granted. Review of the file anddocuments filed by the plaintiff necessitated the Court approvingand filing such Orders. Initially, the Court had granted partialsummary judgment to other defendants and many of the issues hadbeen resolved and were not issues to be decided in thisparticular case. The Court specifically set forth what the issueswere and plaintiff was well aware of same. Further the Court hadinstructed the plaintiff about irrelevant matters that would notbe presented to the jury. In addition, the Court in itsdiscretion conducted voir dire examination but allowed theparties to supplement and ask questions as indicated by therecord. In addition, the Court, prior to trial commencing on thisdate, instructed plaintiff about matters that would beprohibited.
 Whereas, plaintiff during opening statement had to becautioned and instructed numerous times about matters that wereevidentiary in nature and not relevant to the within case. Infact, during a recess the Court specifically admonished theplaintiff concerning matters that were not to be presented sincethey were irrelevant and prejudicial.
 Whereas, even after plaintiff's opening statement, defendantrequested a directed verdict because of the plaintiff'sstatements and actions, and the Court, in its attempt to conducta trial to conclusion, overruled the same.
 Plaintiff then called his first witness. Numerous times duringthe attempted examination of said witness, the Court had toadmonish the plaintiff in regards to matters that he had beenpreviously instructed to not bring up and mention, but plaintiffignored the instructions and persisted in asking questions andmaking testimonial statements which the Court was required tostrike and instruct the jury of same.
 The Court then for the third and fourth time had to admonishthe plaintiff again outside the presence of the jury in regardsto irrelevant and prejudicial matters in which plaintiff wasattempting to testify and not allow the witness [to] complete hisanswer if it was not to his liking and then calling the witnessand defendant's employees "liars". Plaintiff was also warnedabout a mistrial.
 In addition, the record would show herein that the Courtadmonished the plaintiff at least ten (10) times during thepresentation of evidence about his method of presenting evidenceand matters that were irrelevant and prejudicial statements andtestimonial matters that were not proper.
 {¶ 25} Upon careful review, we find that the record is consistent with and supports the findings and conclusions of the April 27, 2005 Judgment Entry. Based on Dray's continued pattern of conduct in persistently refusing to follow instructions and admonitions of the court, we can not say that the trial court erred in granting a mistrial and dismissing the case with prejudice.
 {¶ 26} Therefore, Dray's seven assignments of error are overruled and the April 27, 2005 judgment of the Court of Common Pleas of Allen County, Ohio granting the mistrial and dismissal of this case with prejudice is affirmed.
Judgment affirmed.
 Bryant, P.J. and Cupp, J., concur.