[Cite as *State v. Sheffield*, 2011-Ohio-2395.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95434**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL SHEFFIELD

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-475002

**BEFORE:** Keough, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 400
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Katherine Mullin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KOUGH, J.:

{¶ 1}  Defendant-appellant, Michael Sheffield, appeals from the trial court's judgment finding him in violation of community control sanctions and sentencing him to eight years incarceration.   Finding merit to the appeal, we reverse.

I

{¶ 2}  In March 2006, Sheffield pleaded guilty to one count of misuse of credit cards, a felony of the third degree; three third-degree felony theft

counts; thirteen fourth-degree felony theft counts; three fifth-degree felony theft counts; and one count of forgery, a fourth degree felony.

{¶ 3} On April 10, 2006, the trial court sentenced Sheffield. Defense counsel explained that Sheffield's conduct "occurred because of an overwhelming cycle of drug use [and] drug addiction" and asked the court to impose community control sanctions with inpatient drug treatment. The trial court sentenced Sheffield to five years of community control sanctions with conditions and ordered him to pay $25,000 in restitution. At the end of the sentencing hearing, the judge warned Sheffield that if he violated the community control sanctions, the judge would send him to prison. Specifically, the judge told him: "Let me spell that out for you. You have four F3's. Five years on each F3. Eighteen months on 15 F4's. You have two F5's, 12 months for each of those. I'll run them consecutive. I'll lock you up, throw away the key, because we have to protect your family and the rest of society."

{¶ 4} The subsequent journal entry stated:

{¶ 5} "Violation of the terms and conditions may result in more restrictive sanctions, or a prison term of 5 years as approved by law. (5 years each F-3, 18 months each F-4 and 12 months each F-5, counts to run concurrent to each other)."

**{¶ 6}** After sentencing, Sheffield successfully completed 102 days of a 120-day inpatient drug treatment program at Fresh Start. But then, while on a 48-hour pass, he used cocaine with an acquaintance. He returned to Fresh Start and admitted to using cocaine even before being tested.

**{¶ 7}** On August 16, 2006, at a violation hearing, Sheffield admitted that he had violated the terms of his community control. The trial judge sentenced him to eight years incarceration.

**{¶ 8}** Subsequently, on September 19, 2006, the trial court issued a nunc pro tunc entry regarding the original sentencing entry to reflect that "violation of the terms and conditions may result in more restrictive sanctions, or a prison term of 44 years, 6 months as approved by law. (Counts to run consecutive to each other)."

## II

**{¶ 9}** Sheffield contends that his eight-year sentence is invalid because: (1) he lacked adequate notice that failing a single drug test could result in the termination of community control; and (2) the trial court's original sentencing entry stated that violation of community control would result in a prison term of five years.

**{¶ 10}** Sheffield contends that he did not have notice that a single failed drug test would result in the revocation of his probation because the trial judge told him at sentencing:

{¶ 11} "If you have a relapse, if you think you are going to test positive in any way, it's better to come in and fess up, say 'I screwed up.' There are going to be consequences, but it won't be as bad as if you don't show up. If we have to track you down, if you commit more felonies while you are out on probation, you are going to be a violator of this probation."

{¶ 12} Sheffield argues that in light of this advisement, he did not have adequate notice that using illegal drugs while on community control sanctions would result in revocation of community control. He further contends that because he did just what the judge had told him to do, i.e., admit his relapse and "fess up," the trial court abused its discretion and violated his due process rights by finding that he violated community control. We find no merit to these arguments.

{¶ 13} First, Sheffield did not raise any lack-of-notice argument at the violation hearing; he argued only that the trial judge should continue community control because this was his first failed drug test, he immediately admitted his mistake, and he had otherwise been successful at Fresh Start. Because he did not raise the argument below, he has waived it for purposes of appeal. *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 611 N.E.2d 830.

{¶ 14} Furthermore, a defendant's own admissions are sufficient to prove a violation of community control conditions. *State v. Hayes*,

Cuyahoga App. No. 87642, 2006-Ohio-5924, ¶16, citing *Stae v. Willis*, Fairfield App. No. 05 CA 42, 2005-Ohio-6947. Sheffield admitted at the violation hearing that he had violated the terms of his community control. Sheffield's admission proves not only that he violated the terms of his community control, but also indicates that he was aware that using illegal drugs while on community control was a violation of the conditions.

{¶ 15} Finally, contrary to Sheffield's argument, the trial court did not advise him that it would not revoke his community control if he "fess[ed] up" upon a relapse. Rather, the trial court told him that there would be consequences for a violation, but they would not be as severe as they would be if he failed to show up.

{¶ 16} A trial court's decision finding a violation of community control will not be disturbed on appeal absent an abuse of discretion. *State v. McCord*, Cuyahoga App. No. 92268, 2009-Ohio-2493, ¶5, citing *Hayes*, supra. "Abuse of discretion" connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Maurer* (1984), 15 Ohio St.3d 239, 253, 473 N.E.2d 768. In light of the foregoing, the trial court did not abuse its discretion in finding that Sheffield had violated the terms of his community control.

{¶ 17} Sheffield next contends that even if the trial court properly revoked community control, the trial court erred in sentencing him to eight years incarceration.

{¶ 18} R.C. 2929.15(A)(1) authorizes trial courts to place certain felony offenders on community control. R.C. 2929.19(B)(5) provides that if a sentencing court decides to place an offender on community control, that court "shall notify the offender that, if the conditions of the sanction are violated * * * [the court] may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation * * *." A trial court sentencing an offender to a community control sanction must, at the time of sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation. *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, paragraph two of the syllabus.

{¶ 19} Sheffield first contends that the trial court could not impose a prison term because it did not notify him at the original sentencing hearing of the specific prison term that it would impose if he violated community control. We disagree. The trial judge told him, "[y]ou have four F3's. Five years on each F3. Eighteen months on 15 F4's. You have two F5's, 12 months for each of those. I'll run them consecutive." Although it would

have been better if the judge had added up the number of years for Sheffield, it is apparent that he told him the definite sentence he would receive for each count in the event of a violation, i.e., the judge told him he would receive the maximum prison term for each offense if he violated community control. We find the trial court's advisement to constitute a "specific" term as required by R.C. 2929.19(B)(5).

{¶ 20} In *Brooks*, supra, the Ohio Supreme Court noted that to comply with R.C. 2929.19(B)(5), "the judge shall, in straightforward and affirmative language, inform the offender at the sentencing hearing that the trial court will impose a definite term of imprisonment of a fixed number of months or years, such as 'twelve months' incarceration,' if the conditions are violated." Id. at ¶19. It noted further that there are some situations where it would be "overly rigid" to conclude that the trial court had not complied with the requirements of R.C. 2929.19(B)(5). Id. at ¶32. Specifically, it found that where a defendant is advised at the plea hearing what the specific maximum term would be, and then at sentencing, the trial court states that it will impose "the maximum" prison term if community control is violated, without stating what the maximum is, it would be "overly rigid" to find that the trial court's advisement did not comply with the notice requirement of R.C. 2929.19(B)(5). Id.

{¶ 21} In this case, Sheffield was advised at the plea hearing of the maximum prison term for each offense. At sentencing, he was advised of the specific maximum term that would be imposed for each offense if he violated community control. Accordingly, we hold that it would be overly rigid to find that the trial court's advisement did not constitute strict compliance with R.C. 2929.19(B)(5).

{¶ 22} Sheffield next contends that even if the language at sentencing were sufficient to impose a prison term, the length of the term was limited to five years because the original journal entry of sentencing indicated that violation of community control sanctions "may result in more restrictive sanctions, or a prison term of 5 years as approved by law. (5 years on each F-3, 18 months each F-4 and 12 months each F-5, counts to run concurrent to each other)." He argues that the trial court could not avoid the five-year limit by issuing a nunc pro tunc entry changing five years to 44 years, 6 months after it had already revoked his probation and imposed an eight-year sentence.

{¶ 23} In *Brooks*, the Ohio Supreme Court found that "the purpose behind R.C. 2929.19(B)(5) notification is to make the offender aware *before a violation* of the specific prison term that he or she will face for a violation." (Emphasis sic.) Id. at ¶33. Further, "[i]t is axiomatic that '[a] court of record speaks only through its journal entries.'" *Hernandez v. Kelly*, 108

Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶30, quoting *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St.3d 366, 2003-Ohio-6608, 800 N.E.2d 361, ¶20. Here, the language of the trial court's journal entry was clear and unambiguous: it informed Sheffield that a violation of community control sanctions could result in a prison term of five years; there was no mention of a prison sentence of eight years.

{¶ 24} This court has held that under Crim.R. 36, nunc pro tunc entries may be used to correct mathematical calculations and typographical or clerical errors and, hence, may be used to correct a sentencing entry to reflect the sentence the trial court imposed upon a defendant at a sentencing hearing. *State v. Spears*, Cuyahoga App. No. 94089, 2010-Ohio-2229, ¶10. Nevertheless, we are persuaded by Sheffield's argument that the trial court could not avoid the clear and unambiguous five-year limit by issuing a nunc pro tunc sentencing journal entry changing "five years" to "44 years, 6 months" almost a month *after* it had already revoked Sheffield's probation and imposed an eight-year sentence. This kind of "after-the-fact" notification "totally frustrate[s]" the purpose of R.C. 2929.19(B)(5), which as noted, is to provide notice to the offender *before* a violation of the specific prison term he could face for a violation. Id. Here, Sheffield had notice that if he violated community control, he could receive five years in prison. Accordingly, we hold that the trial court's attempt to exceed the five-year maximum prison

term by altering its journal entry after it had sentenced Sheffield to eight years in prison contradicts *Brooks* and violates principles of due process.

{¶ 25} Appellant's assignment of error is sustained in part. Case is remanded to the trial court for resentencing with instructions that the maximum prison term that may be imposed is five years.

Reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR